FILED
CLERK

6/2/2023 12:45 pm

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X

UNITED STATES OF AMERICA,

         Plaintiff,

   -against-

LUIS CERDA, *et al.*

         Defendants.
----------------------------------------------------------X

**MEMORANDUM AND ORDER**

21-CR-451 (GRB)

**GARY R. BROWN, United States District Judge**:

In this action charging him with, *inter alia*, two counts of possessing a firearm after conviction of a felony under 18 U.S.C. § 922(g)(1) and one count of conspiracy to commit bank larceny in violation of 18 U.S.C. § 371, defendant Luis Cerda moves to suppress certain evidence, including a firearm supporting one of the two § 922(g)(1) counts, attendant DNA testing and one or more electronic devices seized from his home in Fresh Meadows, New York. Cerda contends that the evidence, seized pursuant to a search warrant issued by a state judge, was obtained in violation of his rights under the Fourth Amendment of the U.S. Constitution. The chief probable cause supporting the search consists of a sworn statement that the affiant had reviewed a pole camera video of a codefendant carrying an object into the premises. The affiant declared that, based on his training and experience, he recognized – without qualification – the object to be a long rifle. Review of the video reveals that the codefendant was carrying *something* as seen in this screenshot:

1



Def.'s Ex. 6.  Defendant persuasively argues that the video depicts the codefendant holding a bouquet of flowers.  Indeed, its appearance, and the way in which the codefendant handles the object in the video, suggest that this is so.  More importantly, though, these factors, taken together with the affiant's testimony about his review of the video and subsequent engagement with other experts, make it clear that the video does not, without qualification, depict the

2

codefendant smuggling a rifle, contrary to the sworn representations made to the state court judge.

The Court held a *Franks* hearing, enabling consideration of the motion on a full record. This opinion follows.

## BACKGROUND

Beginning in mid-2020, New York City Police Sergeant Christopher Colon faced a problem. As part of an ongoing investigation into a burglary ring, he was in receipt of a growing body of information from an informant and various social media posts about an individual named Alberto Santiago, also known as "Dot Com."[1] The information suggested that Santiago, recently released from prison for burglary and wanted for parole violations, was engaging in a series of serious crimes and brazenly brandishing and firing firearms, assault weapons and body armor in images and videos appearing on social media. None of this information could be tied to the Fresh Meadows residence. Tr. 131.

After months of investigation, Colon became increasingly eager to locate and apprehend Santiago. At some point, the informant reported – possibly inaccurately – that Santiago was "staying" with a girlfriend at a location in Fresh Meadows, New York. Tr. 110. Colon conducted surveillance at the location, and had other officers do the same, in an effort to find Santiago, with negative results. Tr. 123-24. By October, Colon was aware that Santiago had a parole violation warrant. Tr. 122. Via text, the confidential informant urged Colon to get a search warrant for the house; Colon responded that he had "nothing on the house" which could support a search warrant. Tr. 114. In mid-November 2020, Colon arranged for a pole camera to be installed near the Fresh Meadows residence. By December 2, Colon expressed concern that

---

[1] Though Santiago is a codefendant herein, the instant motion relates only to Cerda.

3

he might get a warrant but that Santiago would not be in the house.  Tr. 115.  On December 6, 2020, Colon urged the informant to find a social media post that could justify a search warrant application for the residence.  Tr. 114-117 (Colon texting informant "I want to get that warrant ASAP so hopefully we can get one with something he post[s]").

Two days later, a fellow officer advised Colon that in reviewing the pole camera footage, that officer had observed Santiago take "what appeared to be a long gun" into the Fresh Meadows residence.  Tr. 80.  Reviewing the footage frame-by-frame, Colon formed a belief that the object in question was a firearm, yet he was not "100 percent sure."  Tr. 82.  He sent a copy of the video to another officer with firearms expertise, indicating that he saw "what appears to me to possibly be a rifle," and asked for a second opinion.  Tr. 83.  That officer responded that the object "[l]ooks like a possible long gun with a wood attachment."  Tr. 83.  During an oral conversation with a yet another officer asked for an opinion, that officer told Colon that "[b]asically, that's a firearm."  Tr. 85.  Colon tried to obtain a higher quality version of the video, which was provided to the police department, but because he could not open the link provided, he abandoned his effort to view the higher-quality footage.[2]  Tr. 88-89.

Instead, Colon sent the video to an Assistant District Attorney, with an email from Colon noting that the object "[a]ppears to be a firearm," and emailed a second ADA indicating that the object might "possibly be a rifle."  Tr. 80, 142.  The ADA drafted an affidavit in support of a search warrant.[3]  The three-page affidavit, eventually signed by Colon, set forth evidence of Santiago's involvement in certain criminal activity, including firearms possession and a burglary.

---

[2] Initially, the Government emphasized Colon's access to the lower-quality video as an "important " distinction, DE 193 at 7, and yet characterized his failure to access the higher quality video as a "red herring." DE 207 at 8.
[3] In his testimony, Colon properly acknowledged that although the ADA crafted the affidavit, Colon signed it and was responsible for its content.  Tr. 141-42.

Only two factual paragraphs of the affidavit purport to offer facts directly about the residence:

> 11. I further state that I viewed video surveillance from the above mentioned camera from outside the subject location from December 8, 2020 at approximately 3:53 PM which depicts the target exiting a vehicle, which is parked in the driveway at the subject location, and holding between the target's legs, what I recognize to be, based on my training and experience as a police officer, a long rifle. Said video then depicts the target zip up the target's jacket so as to conceal said rifle, then the target walks into the subject location.
>
> 12. I further state that I have viewed approximately five (5) to ten (10) videos from the above mentioned camera from outside the subject location from the past three (3) to four (4) weeks which depicts the target entering and exiting the subject location.

DE 178-1 ¶¶ 11-12. Neither screenshots from the video, nor the video itself, were provided to the court as part of the search warrant application. In a separate paragraph, Colon avers that a check with the New York State Firearms Licensing Division revealed that no one at the residence was licensed to possess a firearm. DE 178-1 ¶15. Based on the information set forth, the application sought a warrant to search for firearms and related paraphernalia, as well as records demonstrating proof of ownership or occupancy for the Fresh Meadows residence. Tr. 24.

Little evidence that Santiago resided at, or exercised dominion or control over the Fresh Meadow residence was provided with the application. As noted, Colon represented that he had viewed five to ten videos over a three to four-week period that showed Santiago entering or exiting the Fresh Meadows residence. DE 178-1 ¶12. According to the hearing testimony, those irregular entries and exits occurred at "random times." Tr. 123. Though Colon had been advised by an informant that Santiago was "staying with" a girlfriend at the residence, this information was not provided to the issuing judge. *See generally* DE 178-1. Moreover, the informant disclosed the name of Santiago's girlfriend, stating that she resided in the Fresh Meadows

5

residence "on her own with a roommate in the apartment," which facts were also not disclosed in the warrant application. Tr. 110. In the pole camera footage from December 8 (the only video provided during the hearing), it appears that Santiago does not have a key for the residence, and someone had opened the door for him. Tr. 163.

      Execution of the warrant occurred on December 11, 2020. DE 22. In the early morning hours before the execution of the search, Colon reiterated the urgency with which he sought a search warrant to apprehend Santiago, writing a text to the informant, "We need com [Santiago's nickname]. Fuck." Tr. 144–45. Then, in a curious, unexplained reference, Colon added, "This should erase it all if I'm successful tonight." Tr. 145. The search uncovered a defaced revolver (subsequently tied to the defendant Cerda), a large amount of currency, narcotics and electronic devices. Tr. 26. Though Colon hoped to apprehend Santiango, he was not at the premises, much to Colon's dismay. Tr. 27; Tr. 145 (Colon writes text to CI complaining, "Out of all the days this mother fucker don't go home."). Several residents were present, including defendant Cerda.

## DISCUSSION

      The Fourth Amendment to the Constitution provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. This provision requires particularly careful application where, as here, the area searched is a residence. *Wilson v. Layne*, 526 U.S. 603, 610 (1999) ("The Fourth Amendment embodies this centuries-old principle of respect for the privacy of the home"); *Payton v. New York*, 445 U.S. 573, 585 (1980) ("[T]he physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.").

6

Here, the defendant moves for suppression based upon an inaccurate representation contained in the sworn affidavit, to wit: Colon's assertion that his review of the video revealed "what I recognize to be, based on my training and experience as a police officer, a long rifle." As to such motion, the Circuit has instructed that:

> a defendant seeking to suppress evidence that was gathered pursuant to a search warrant that was based on inaccurate representations by the Government must show (1) that the inaccuracies were the product of a Government agent's "deliberate falsehood" or "reckless disregard for the truth" rather than innocent mistake, and (2) that, after setting aside the falsehoods, what remains of the warrant affidavit is insufficient to support a finding of probable cause. *Franks v. Delaware*, 438 U.S. 154, 171–72, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978); *United States v. Canfield*, 212 F.3d 713, 717–18 (2d Cir.2000).

*United States v. Coreas*, 419 F.3d 151, 155 (2d Cir. 2005). Recently, the Second Circuit has reiterated the procedures employed in resolving such a motion:

> A *Franks* hearing permits a criminal defendant to challenge the veracity of a warrant affidavit under certain circumstances. To trigger the hearing, a defendant must make a "substantial preliminary showing" that (1) the warrant application contains a false statement, (2) the false statement was included intentionally or recklessly, and (3) the false statement was necessary to the finding of probable cause. *Franks*, 438 U.S. at 155–56, 98 S.Ct. 2674; *see also Levasseur,* 816 F.2d at 43. The Supreme Court has interpreted the warrant clause as containing an implicit guarantee that the information in a warrant application is "'truthful' in the sense that the information put forth is believed or appropriately accepted by the affiant as true." *Franks,* 438 U.S. at 165, 98 S.Ct. 2674. The fruits of the search must be excluded if the allegation of perjury or recklessness is established by a preponderance of the evidence and the affidavit's remaining content with the falsehoods set aside is insufficient to establish probable cause. *Id.* at 156, 98 S.Ct. 2674.

*United States v. McKenzie*, 13 F.4th 223, 236 (2d Cir. 2021), *cert. denied*, 213 L. Ed. 2d 1005, 142 S. Ct. 2766 (2022).

Several matters are readily resolved. First, despite the Government's continued opposition, this Court determined that defendant made the preliminary showing required to warrant a hearing. *See generally* Tr. of Proceedings dated 5/5/23; Tr. 5-13. Second, following

7

that hearing, this Court finds, based on its review of the record and careful evaluation of the testimony, that Colon did not intentionally attempt to mislead the state court judge in obtaining the search warrant. The defendant's claim that the representation "appears intentional," DE 194 at 2, is rejected. Thus, the remaining questions are whether: (1) Colon's statement about the video was inaccurate; (2) that statement was made in with reckless disregard for the truth and (3) the remaining information in the affidavit contained sufficient probable cause to support issuance of the search warrant.

### 1. Accuracy of the Challenged Statement

The Government contends that insufficient evidence exists to suggest that the challenged statement was inaccurate because, it contends, the visual depiction contained in the video defies interpretation:

> THE COURT: Looking at that still, it is hard to credit a subjective belief that this was a gun. If you look at it, the subject, not our defendant here, the codefendant, is holding this thing with one finger. He has his thumb under it. He's just clasping it with one finger. [ ] This is a bouquet of flowers. It's a real problem.
>
> MR. WENZEL: Judge, respectfully, I do not agree with your analysis. He has his hand on this item –
>
> THE COURT: You are looking at Defense Exhibit 6 and you think that's a gun?
>
> MR. WENZEL: Judge, I don't know what it is and no one does. No one does.

Tr. 95. Here, the Government posits a curious argument, suggesting:

> at the hearing, the Court stated that it believed the item in the video was flowers. The Court may very well be right: the object in the video could be flowers. However, the first time the Court viewed this video, it had already been informed by the defendant's motion that the object in the video was flowers . . . Once one is told the disputed object is flowers, it is difficult to view the video in any other way.

DE 207 at 9. The thought appears to be that the Court, having succumbed to the power of suggestion, remains under some kind of delusion as to the nature of the evidence.

8

>Remarkably, at the hearing, Sgt. Colon testified as follows:
>
>if we're bringing up the motion, then, I mean, I still possibly believe it's a firearm.  But with the motion in my head, there's changes.  It may not be. [ ] The defense's motion stating that it was not a firearm and it was flowers. [ ] It changes what I'm looking at completely, puts a picture in my head and I'm looking at the video now thinking it could possibly be flowers.

Tr. 78.



This argument proves fascinating, though ultimately irrelevant.  The Government compares the video to an amorphous visual representation like, for example, the famous optical illusion known as "Rubin's Vase," a version of which is seen here.  Because Rubin's Vase constitutes a negative space illusion, viewers are likely to see either an elaborate vase or two human faces in profile.  In such circumstances, previewing its content for a viewer might influence what the viewer will then perceive.

The problem with this analysis (and much of the Government's position on this motion) is that it asks the wrong question.  Perhaps the video is sufficiently amorphous such that it could suggest different items, and approaching it with a preconceived notion could influence a viewer's interpretation.  In this case, the visual elements and the manner in which Santiago handles the object sufficiently undermine Colon's conclusive statement to the state court judge that the video depicts "what I recognize to be, based on my training and experience as a police officer, a long rifle."  Thus, the Government's argument that the video is indecipherable does not further its cause.

The Court found that the video depicts Santiago holding flowers rather than a rifle, Tr. 10-11; 94 ("it's a bouquet of flowers"); 95 (same), a possibility conceded by Sgt. Colon.  Tr. 177.  Even assuming, however, that the image was sufficiently unclear as to be subject to multiple

interpretations, Colon's statement, which conclusively describes the image as that of a rifle, is rendered sufficiently inaccurate[4] to satisfy the first element of the *Franks* inquiry.  *Coreas*, 419 F.3d at 155 (*Franks* permits challenge of search predicated upon "inaccurate representations by the Government").

### 2. Reckless Disregard for the Truth

The question of whether the challenged statement was made with reckless disregard for the truth requires application of a standard that has sometimes proven elusive.  "The Supreme Court in *Franks* did not define the term 'reckless disregard' other than to state that 'allegations of negligence or innocent mistake are insufficient.'"  *United States v. Lahey*, 967 F. Supp. 2d 698, 709 (S.D.N.Y. 2013) (cleaned up) (*quoting Franks*, 438 U.S. at 171, 98 S.Ct. 2674).  In other words, the Supreme Court defined what reckless disregard is *not* – mistake and negligence don't qualify – yet failed to provide guidance as to what it *is*.[5]  This led to a long-running split among the circuit courts – some adopting a subjective standard imported from First Amendment cases, while others implementing an objective test.  *Compare United States v. Williams*, 718 F.3d 644, 649–50 (7th Cir. 2013) (applying the subjective standard for recklessness to omissions from an affidavit), with *Wilson v. Russo*, 212 F.3d 781, 788 (3d Cir. 2000) ("[O]missions are made with reckless disregard if an officer withholds a fact in his ken that '[a]ny reasonable person would have known . . . was the kind of thing the judge would wish to know.'" (*quoting United States v. Jacobs*, 986 F.2d 1231, 1235 (8th Cir.1993))).

---

[4] Notably, during the search, no long gun was recovered, providing inferential, if not conclusive, evidence of the inaccuracy of the statement.  Tr. 26 (discussing seizure of revolver).  The Government's argument that there was "a gun recovered in the house" proves inapposite (and bordered on disingenuous) in that the gun recovered was a handgun.  Tr. 11-12.

[5] This could be analogized to someone positing a question about their favorite kind of fruit, advising that it's not an apple or an orange.  While the field has been narrowed, questions remain.

10

For some time, the Second Circuit remained on the sidelines. *United States v. Kunen*, 323 F. Supp. 2d 390, 395 (E.D.N.Y. 2004) ("The Second Circuit has not addressed the issue."). Then, in the context of a wiretap application, the Court of Appeals provided guidance. *United States v. Rajaratnam*, 719 F.3d 139, 153 (2d Cir. 2013) ("This inquiry, which looks to the mental states of mind of government officials, is said to be a 'subjective' test rather than an 'objective' one."). In *Rajaratnam*, which dealt with the question of evaluating an omission, rather than a misstatement, in an affidavit, the Court reversed the decision of the district court, which based its determination on whether "the omitted information was clearly critical to the affidavit, thereby raising an inference of recklessness." *Id.* at 153–54. In reaching this determination, the Second Circuit "conclude[d] that the District Court erred in applying the 'reckless disregard' standard because the District Court failed to consider the actual states of mind of the wiretap applicants." *Id.* This formulation appears consistent with a subjective test for reckless disregard. Yet, *Rajaratnam* also suggests that there are objective elements to in making this determination:

> To prove reckless disregard for the truth, the defendants [must] prove that the affiant in fact entertained serious doubts as to the truth of his allegations. Because states of mind must be proved circumstantially, a factfinder may infer reckless disregard from circumstances evincing obvious reasons to doubt the veracity of the allegations. [ ]
>
> Of course, the "reckless disregard" aspect of a *Franks* inquiry can sometimes be inferred from the omission of critical information in a wiretap application.
>
> Subjective intent, after all, is often demonstrated with objective evidence.

*Id.* Thus, *Rajaratnam* appears to provide a hybrid standard: a subjective test that can, at times, be satisfied through objective considerations. A similar formulation has been provided by the Seventh Circuit, in a case quoted with approval in *Rajaratnam*:

> To prove reckless disregard for the truth, the defendants must prove that the affiant in fact entertained serious doubts as to the truth of his allegations. Because states of mind must be proved circumstantially, a factfinder may infer reckless disregard

11

> from circumstances evincing obvious reasons to doubt the veracity of the allegations.

*Id.* at 154 (cleaned up) (quoting *United States v. Whitley*, 249 F.3d 614, 621 (7th Cir. 2001)).

This guidance becomes more attenuated where, as here, the inaccuracy in question represents a misstatement, rather than an omission.[6] As one court has observed:

> As might be expected, the guideposts for determining recklessness are different when evaluating misrepresentations and omissions. In the context of the former, courts generally ask whether the affiant made a false statement with knowledge that the statement was false; had a serious doubt as to the truth of the statement when he or she made it; or had obvious reason to doubt the veracity of the statement. In the context of reckless omissions, courts in the Second Circuit have generally asked whether the omitted information was clearly critical to assessing the legality of the search.

*United States v. Lahey*, 967 F. Supp. 2d 698, 722–24 (S.D.N.Y. 2013) ("the Government has presented intuitively appealing arguments as to why each of the omissions was merely negligent").

Colon was aware at the time that his unqualified statement was unjustified, as he solicited the opinions of several officers as to the nature of the object depicted. And their opinions, like his own, were not without reservation. In describing the footage to Colon, his partner Officer Rivas reported that the video showed Santiago with "what appeared to be a long gun." Tr. 70. After his review, Colon was not "100 percent sure," and described the images to a colleague as "what appears to me to possibly be a rifle." Tr. 81-82. That officer, a firearms expert, reported that what Santiago was holding "[l]ooks like a possible long gun with a wood attachment." Tr.

---

[6] Interestingly, a challenged statement can, as is evidenced in this case, be both a misstatement and omission. Colon's sworn representation that the video contained "what I recognize to be, based on my training and experience as a police officer, a long rifle" certainly constitutes a misstatement of fact: the video does not contain an image of a long rifle. Alternatively, the statement constitutes a misstatement because Colon did not conclusively recognize the object as a rifle, yet stated the assertion as an absolute. At the same time, the statement may be characterized as a glaring omission: he failed to reveal that he had doubts about his perception and he sought the opinions of several other officers in an effort to confirm his suspicions. By his own admission, Colon did not indicate in the affidavit that he consulted with others to help buttress his observations. Tr. 142.

12

83. And, yet, when the affidavit was submitted to the judge in support of a search warrant, all uncertainty disappeared.

Based on this unusual set of facts, the determination is relatively straightforward. In this case, drawing an inference of reckless disregard from "circumstances evincing obvious reasons to doubt the veracity of the allegations," *Rajaratnam*, 719 F.3d at 154, proves simple, as those circumstances, and to some extent the inference itself, come directly from the affiant's testimony. Colon acknowledges that, upon viewing the pole camera footage, he was "not 100% sure" that it depicted a firearm, so he sought review from a firearms expert "to give me his opinion as well [as] to help me solidify why I'm trying to obtain a search warrant." Tr. 82. "Looks like a possible long gun with a wood attachment," the expert responded, "Can't tell what type." Tr. 83. His abandonded efforts to obtain the higher-quality video further bears on his state of mind. Thus, Colon's actions and statements revealed that he had reason to doubt the truth of the allegation that Santiago brought a firearm into the residence. Against this backdrop, his unqualified statements that he "recognize[d]" the object as a "long rifle," and that such recognition was "based on *my* training and experience as a police officer" (emphasis added) can only be characterized as reckless disregard.

Furthermore, the Court may consider whether the challenged statement proved critical to the application in reaching a determination of reckless disregard, though this factor is not conclusive. The "'reckless disregard' aspect of a *Franks* inquiry can sometimes be inferred from the omission of critical information in an . . . application," yet an "applicant does not necessarily act with 'reckless disregard for the truth' simply because he or she omits certain evidence that a reviewing court, in its judgment, considers to be 'clearly critical.'" *Rajaratnam*, 719 F.3d at 154.

13

This factor is unassailably present in this case, and further supports the finding of reckless disregard. According to Colon's testimony, the challenged statement represented his *only* basis for seeking a search warrant. In response to questions by the Court, Colon acknowledged sending several texts to his informant in the months prior to the search stating that he had "nothing on the house" that would form the basis for seeking a search warrant. Tr. 178. He further testified that the only thing that changed prior to his application for the warrant were the observations he made of the December 6 pole camera video. Tr. 179. This factor is present in a way not discussed in caselaw: that the challenged statement was critical to obtaining the warrant does not result from an *ex post* determination of the court, *Rajaratnam*, 719 F.3d at 154, but derives from the testimony of the applicant that the pole camera video provided the only probable cause in support of the search. Thus, because the applicant recognized the critical nature of the fact misrepresented in obtaining the warrant, its centrality to the probable cause showing strongly supports the finding of reckless disregard.

Finally, the finding of reckless disregard draws further support from the understandable yet increasing desperation of Colon to apprehend Santiago. *See, e.g.*, Tr. 117 (Dec. 6 text urging informant to find social media post to justify search warrant); Tr. 144–45 ("We need com. Fuck."). The Government concedes that "Colon and his law enforcement colleagues acted with a sense of urgency in obtaining this search warrant." DE 207 at 9. In a slightly different context, the Second Circuit has cautioned:

> Child pornography is so repulsive a crime that those entrusted to root it out may, in their zeal, be tempted to bend or even break the rules. If they do so, however, they endanger the freedom of all of us.

*Coreas*, 419 F.3d at 151; *cf. United States v. Kunen*, 323 F. Supp. 2d 390, 399 (E.D.N.Y. 2004)

(noting that a demonstrated "'damn the torpedoes, full speed ahead' mentality" bears on a recklessness determination). Colon's demonstrated zeal to obtain a search warrant in the hopes of locating Santiago bears on his state of mind and further suggests that (and helps explain why) the affidavit crossed the line into the realm of reckless disregard.

### 3. Residual Review of the Affidavit

Having determined that the challenged statement was made in reckless disregard for the truth, the Court must then decide whether "after setting aside the falsehoods, what remains of the warrant affidavit is insufficient to support a finding of probable cause." *Coreas*, 419 F.3d at 155. As the Second Circuit has noted:

> Probable cause is "a practical, commonsense decision whether, given all the circumstances set forth in the affidavit . . . including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules."

*United States v. Canfield*, 212 F.3d 713, 718 (2d Cir. 2000) (cleaned up). "To establish probable cause to search a residence, two factual showings are necessary—first, that a crime was committed, and second, that there is probable cause to believe that evidence of such crime is located at the residence." *United States v. Travisano*, 724 F.2d 341, 345 (2d Cir. 1983) (*citing United States v. Harris*, 403 U.S. 573, 584 (1971)).

The Government argues that the residual material in the affidavit, which it acknowledges "was not artfully drafted," DE 207 at 10, supports a finding of probable cause to search the Fresh Meadows residence. However, after redacting the disputed language, the residue of affidavit fails to sufficiently connect Santiago and his alleged activities with the subject residence. The remaining language in the affidavit largely documents Santiago's possession of several firearms (at least one of which had been seized prior to the warrant application) and related activities.

15

None of those acts are in any way tied to the residence. Some of that information came from images posted on social media which could not be linked to the residence.

The lynchpin of the residium appears to be Colon's opinion that "owners of firearms typically secrete firearms, bullets, magazines and other firearm accessories in their home or places within their dominion and control." DE 178-1 ¶ 16. It has been held that an officer's expert opinion that an individual engaged in criminal activites stores evidence in their homes should be considered in connection with a probable cause determination. *See United States v. Benevento*, 836 F.2d 60, 70 (2d Cir. 1987) (considering opinion by agent that "drug traffickers [ ] were likely to keep various items of evidence of drug-related activity including transactions records, large sums of currency, etc., in their personal homes"), *abrogated on other grounds by United States v. Indelicato*, 865 F.2d 1370 (2d Cir. 1989). There is some authority for the proposition that such an opinion, standing alone, proves insufficient to establish probable cause to search where, as here, the affidavit contains "no facts to support an inference that evidence of [a suspect's] criminal activity would be found at his home." *United States v. Rios*, 881 F. Supp. 772, 775–77 (D. Conn. 1995) ("Lyons's general averments based on her training and experience do not, standing alone, constitute a 'substantial basis' for the issuance of this search warrant. The court therefore concludes that the search warrant for Rios's residence lacked probable cause.").

Even if Colon's opinion that firearms owners maintain weapons at their homes was sufficient without more, the affidavit is further undermined by insufficient information to support a conclusion that the Fresh Meadows residence was Santiago's home. *Compare Rios*, 881 F. Supp. at 775 ("The affidavit provides probable cause for the conclusion that Rios resides at [the subject residence] [b]ased on wire intercepts and utility and telephone subscriber information").

The affidavits states only that Santiago was seen entering or exiting the premises a handful of times over a nearly month-long period, while discussion of other residents was omitted. DE 178-1 ¶ 12.[7] This information, without more, does not establish dominion and control of the premises by Santiago. Indeed, if such information were sufficient, the Government could obtain search warrants for nearly anywhere Santiago visited.

Generally, probable cause turns on objective factors. *Whren v. United States*, 517 U.S. 806, 813 (1996) ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis"); *Pinkney v. Keane*, 737 F. Supp. 187, 192 (E.D.N.Y.), *aff'd*, 920 F.2d 1090 (2d Cir. 1990) ("[I]f the objective probable cause test is met it is not also necessary to establish that the particular officer making the arrest or search subjectively believed probable cause was present"). Nonetheless, the Court cannot ignore the unusual facts in this case, to wit: Colon's testimony acknowledging that without the pole camera video purportedly depicting Santiago smuggling a firearm into the residence, he had no basis to pursue a search warrant application. Tr. 178–79. The officer's assessment is certainly worthy of consideration.

For all of these reasons, the Court finds that, absent the disputed language, the residuum in the affidavit fails to establish probable cause.

## CONCLUSION

Based on the foregoing, defendant Cerda's motion to suppress the firearm, related DNA

---

[7] Ironically, even if erroneous, the information received from the informant that Santiago was "staying" at the residence might have been sufficient to establish probable cause, but as the Government acknowledges, the Court's analysis is limited to the four corners of the affidavit. DE 207 at 2.

evidence and electronic devices in which he had a privacy interest is GRANTED. Counsel is to provide the Court with a joint written status report in one week as this matter.

Dated: Central Islip, New York
June 2, 2023

                                                /s/ Gary R. Brown
                                                Gary R. Brown
                                                United States District Judge